NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

JACOREE D., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.D., C.D., *Appellees.*

No. 1 CA-JV 21-0053
FILED 9-2-2021

Appeal from the Superior Court in Coconino County
No. S0300JD201900032
The Honorable Elaine Fridlund-Horne, Judge

**AFFIRMED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Rhys Campbell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose
*Counsel for Appellee Department of Child Safety*

_____

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Kent E. Cattani joined.

_____

**T H U M M A**, Judge:

¶1        Jacoree D. (Father) challenges the termination of his parental rights to J.D. and C.D. based on chronic substance abuse and 15-months time-in-care. Because he has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        Father has a lengthy history of alcohol and substance abuse involving marijuana, codeine and methamphetamine, along with criminal convictions. Some of his criminal offenses involved domestic violence against Amanda H. (Mother), who is not a party to this appeal. In December 2018, Father was placed on probation for two years after he pled guilty to felony possession of drug paraphernalia -- methamphetamine.

¶3        In January 2019, Father was arrested and charged with disorderly conduct for yelling at Mother while C.D. was present. In March 2019, Father was arrested on a warrant for violating probation, and police found methamphetamine in his possession. In June 2019, Father was again arrested and charged with violating probation. Between arrests, Father underwent a substance-abuse assessment as a condition of probation and was diagnosed with amphetamine dependence and stimulant-use disorder.

¶4        Meanwhile, in April 2019, the Department of Child Safety (DCS) received a report expressing concerns about the welfare of children in Mother's care, including J.D. (born in 2008) and C.D (born in 2013), when other children in her home tested positive for methamphetamine. J.D. and C.D. were removed from Mother's care and placed with their maternal grandfather. Upon removal, C.D. tested positive for methamphetamine. DCS reported that Father was "not involved with the care of the children and his whereabouts are unknown."

¶5            DCS filed a dependency petition in May 2019, alleging Father neglected and abandoned J.D. and C.D. At that time, Father had not established paternity of J.D (who was 10 years old), although he did so a year later. DCS amended the petition to allege incarceration and substance abuse grounds as to Father. In July 2019, the court found J.D. and C.D. dependent as to Father (when he did not contest the incarceration and substance abuse grounds) and adopted a case plan of family reunification.

¶6            While incarcerated during the dependency, Father participated in drug treatment and parenting classes. DCS noted that he had not had sufficient contact with J.D. and C.D. to show that he could safely parent the children, and he had "yet to prove he can remain sober outside of jail." Father successfully completed the Exodus program, a 90-day substance abuse program. However, the urine sample Father provided after completing that program was positive for THC.

¶7            DCS provided Father various reunification services, including drug testing, substance abuse treatment, and behavioral health, visitation and parenting skills services. DCS referred him three times for substance abuse treatment at Arizona Families First, but two of those referrals were closed out for lack of contact. Father also missed two substance abuse tests and, when he did test, his sample was positive for alcohol. While Father consistently visited J.D. and C.D., he missed eight out of twelve parenting skills sessions.

¶8            In January 2020, Father relapsed, was evicted from a sober living home, served two days in jail for violating probation and moved in with his grandmother. Father later admitted to using methamphetamine in March 2020. From April to June 2020, Father tested positive six times for amphetamine or methamphetamine.

¶9            In August 2020, Father completed a 28-day residential substance abuse program. Then he moved into Oxford House, a sober living home that does not allow children. Father reported that life stressors had caused him to use drugs around this time. DCS reported that while Father "demonstrated sporadic sobriety, he continue[d] to experience relapses" and he had not resolved safety concerns related to his substance abuse.

**¶10**         In September 2020, the court changed the case plan to severance and adoption. DCS then moved to terminate the parent-child relationship between Father and J.D. and C.D. on grounds of chronic substance abuse and 15-months time-in-care, also alleging that severance would be in the children's best interests. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3) & (B)(8)(c) (2021).[1]

**¶11**         The severance adjudication was held in early December 2020. The DCS case manager testified that Father was not "in full compliance with all of the offered or recommended services listed in the case plan." She added that DCS required at least another six-months of sobriety outside of a controlled environment to show that substance abuse would no longer be a barrier to reunification.

**¶12**         The case manager testified that the children were placed together in a potential adoptive home and had other familial adoptive home placements available. She added that both children would benefit from termination because they would have permanency, as well as living in a drug-free environment without exposure to domestic violence, where their needs were being met. She testified that the uncertainty of remaining in a dependency was negatively affecting J.D. and C.D.

**¶13**         At the time of trial, Father was living at Oxford House with no date set for him to leave. Father testified that he planned to leave eventually and move in with his father in a house that was under construction. Father admitted to using methamphetamine as recently as a few months before trial.

**¶14**         After taking the matter under advisement, the court found that DCS had proven both statutory grounds by clear and convincing evidence. The court found that, "[g]iven the relapses that had occurred late in this case after treatment programs were completed, this court finds that Father would need more than a year of sobriety after his termination from probation to have confidence that it would be in his children's best interest to be returned home." The court also found that DCS had shown termination was in the best interests of the children by a preponderance of the evidence.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶15 This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶16 As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground set forth in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

## I. Father Has Not Shown The Court Erred In Finding DCS Proved Chronic Substance Abuse.

¶17 To terminate parental rights based on chronic substance abuse, a court must find that: (1) the parent has "a history of chronic abuse of dangerous drugs, controlled substances or alcohol;" (2) "the parent is unable to discharge parental responsibilities because of" chronic abuse of controlled substances or alcohol; and (3) "there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period." A.R.S. § 8-533(B)(3). The court may consider the parent's prior substance abuse, including "the length and frequency of [Father's] substance abuse, the types of substances abused, prior efforts to maintain sobriety, and prior relapses." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 20 (App. 2016). A child's interest in permanency prevails over a parent's uncertain battle with addiction. *Id.* at 287 ¶ 17.

¶18 "The term 'parental responsibilities' is capable of being understood by persons of ordinary intelligence as referring to those duties or obligations which a parent has with regard to his child." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378 ¶ 20 (App. 2010). It "does not 'require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge "the parental responsibilities."'" *Id.* at 378 ¶ 19 (citation omitted). Similarly, "chronic" drug use is long-lasting, but it does not have to be constant. *Id.* at

377 ¶ 16. To determine whether there are reasonable grounds to believe a parent's substance abuse will continue for a prolonged indeterminate period, the court may consider the parent's ability to rise above addiction in a non-custodial, unstructured setting, as well as the ability to abstain from substance use during the case. *Id.* at 379 ¶ 29. Periods of temporary abstinence from drugs are insufficient to outweigh a parent's significant history of abuse. *Id.*

¶19 Father argues that the court erred by (1) disregarding the fact that Mother denied Father access to J.D. and C.D. and (2) disregarding father's sobriety by setting an arbitrary period of required sobriety. Father does not contest that he has a history of chronic substance and alcohol abuse. Instead, he argues that he could not discharge parental responsibilities only because Mother denied him access to children, and not because of his substance abuse.

¶20 Father argues that he was more successful in treating his substance abuse than the parents in two cases in which parental rights were terminated. *See Raymond F.*, 224 Ariz. at 375; *Jennifer S.*, 240 Ariz. at 284. However, the question is not whether Father has been more successful in his substance abuse treatment than other parents who had their parental rights terminated, but whether Father's substance abuse would continue for a prolonged period of time. The record supports the court's finding that his substance abuse would continue for a prolonged, indeterminate period.

¶21 Despite Father's arguments, reasonable evidence supports the superior court's finding that his substance abuse prevented him from being able to care for J.D. and C.D. before and during the dependency. Since 2003, Father has been arrested many times for alcohol and drug-related offenses. Before DCS' involvement, Father did not assert his parental rights or protect J.D. and C.D. from Mother. It took more than a decade for Father to establish paternity of J.D. and he did so a year into the dependency. Father also admitted to neglecting the children because of his substance abuse.

¶22 Even after Father became engaged in the dependency process, his abuse of substances continued to render him unable to parent. While he completed two treatment programs, he failed to consistently and successfully participate in required services to gain physical custody of the children. Father also lacked stable housing and was living where he could not be the custodial parent to the children. He also indicated that the house he planned to move into had not yet been built. Collectively, the evidence

was sufficient to support the court's determination that Father could not discharge his parental duties because of his chronic substance abuse.

¶23 On appeal, Father also argues the court erred by concluding he would have to demonstrate sobriety for more than one year. Not so. Father's four plus months of sobriety preceding trial do not outweigh his history of substance abuse over many years or his consistent inability to abstain during this case. On this record, Father has not shown the court erred in concluding he needed to maintain sobriety for more than a year, particularly since he relapsed after completing multiple treatment programs. *Cf. Christy C. v. Arizona Dep't of Econ. Sec.*, 214 Ariz. 445, 449 ¶ 10 (App. 2007) (noting superior court's findings that a parent "would have to show a period of sobriety for at least a year and participate in several services, particularly as to [her] substance abuse histories").

¶24 Father has not shown sustained sobriety in a non-custodial, unstructured setting like that in which he would be expected to raise the children. He has been able to maintain his sobriety in an inpatient program and, at least for a time, at a sober living home. But despite being in a sober living home, Father still tested positive for codeine. The record supports the court's finding that Father's chronic substance abuse will persist for a prolonged indeterminate period and continue to negatively affect his parenting abilities. Thus, Father has not shown the court erred in finding DCS proved this statutory ground by clear and convincing evidence.[2]

## II. Father Has Not Shown the Court Erred In Finding That Severance Was In the Bests Interests of the Children.

¶25 When a statutory ground is proven, the court must determine whether termination is in a child's best interests by a preponderance of the evidence. A.R.S. § 8–533(B); *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50 ¶ 8 (2018). In doing so, the court must consider the totality of the circumstances, recognizing that the primary concern is the child's best interest in stability and security. *Alma S.,* 245 Ariz. at 150 ¶ 13. Best interests are proven when the evidence shows that a child would benefit from severance or would be harmed by a continuation of the parent-child relationship. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Best interests may be shown where the child is in a potentially-adoptive

---

[2] Given this conclusion, this court need not (and expressly does not) address Father's arguments regarding the 15-months time-in-care ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

placement that is meeting the child's needs. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 12 (2016).

**¶26** Father argues that the court made no specific findings about harm or benefit of termination of his parental rights on the children. While the court's legal conclusions are terse, the findings of fact are sufficient. The court made extensive, well-supported factual findings and referred to those to conclude that severance was in the children's best interests. The record shows that both children were together in a familial, adoptive placement. Moreover, the trial evidence included testimony by the DCS case manager that severance and adoption would be in both J.D. and C.D.'s best interests because they were in a placement that was meeting all their needs. The case manager also added that the children would benefit from permanency because they could live in a drug-free environment free from exposure to domestic violence. This evidence is sufficient to sustain the court's decision that severance is in the best interests of the children.

## CONCLUSION

**¶27** The order terminating Father's parental rights to C.D. and J.D. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA